NOT DESIGNATED FOR PUBLICATION

No. 122,165

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

S.J. LOUIS CONSTRUCTION, INC.,
*Appellant*,

v.

WATER DISTRICT NO. 1 OF JOHNSON COUNTY,
*Appellee*.


MEMORANDUM OPINION

Appeal from Johnson District Court; PAUL C. GURNEY, judge. Opinion filed April 30, 2021. Affirmed in part, reversed in part, and remanded with directions.

*Timothy J. Davis*, of Bryan Cave Leighton Paisner LLP, of Kansas City, Missouri, for appellant.

*Michelle R. Stewart* and *Jennifer R. Johnson*, of Hinkle Law Firm LLC, of Overland Park, for appellee.


Before BRUNS, P.J., GREEN and ATCHESON, JJ.

PER CURIAM: S.J. Louis Construction, Inc. (SJL) appeals the trial court's order dismissing its lawsuit against Water District No. 1 of Johnson County (WaterOne), striking its defenses to WaterOne's counterclaim, entering default judgment in WaterOne's favor, and ordering it to pay WaterOne's attorney fees associated with the costs of preparing and filing its motions to compel and for sanctions. The trial court entered the preceding sanctions after finding that SJL deliberately violated its previous order to compel discovery. SJL, however, contends that it never violated the trial court's compel order. Thus, it argues that the trial court erred as a matter of law when it imposed

1

any sanctions upon it. Alternatively, SJL contends that the trial court's sanctions of dismissing its claims, striking its defenses, and entering default judgment in WaterOne's favor were too severe for its particular violations of the trial court's compel order. As a result, SJL argues that at the very least, this court should vacate the trial court's order imposing sanctions and remand to the trial court for completion of discovery. We agree, in part, and reverse, in part, the trial court's sanctions of the following: (1) the dismissal of SJL's claims against WaterOne, (2) the striking of SJL's defenses to WaterOne's claim for liquidated damages, and (3) the entering of default judgment against SJL on WaterOne's claims for liquidated damages.

We affirm, however, the trial court's order requiring SJL to pay attorney fees in the amount of $4,557 for the cost of preparing the initial motion to compel and for the filing and preparation of the motion for sanctions set out in the trial court's journal entry of judgment, dated February 16, 2018.

Thus, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

*The Pipeline Project*

In October 2013, SJL, a Minnesota-based company, contracted with WaterOne to construct a 42-inch diameter water pipeline, which would run 16,214 linear feet, and a 60-inch diameter water pipeline, which would run 11,456 linear feet, for $11,094,183. Black & Veatch, which designed the pipeline project plans for WaterOne, served as the pipeline project engineer.

SJL started constructing the 42-inch water pipeline in March 2014. Then, about two months later, in May 2014, SJL started constructing the 60-inch water pipeline. Ultimately, in April 2016, SJL completed the pipeline project.

Although it is unclear from the record on appeal when exactly SJL was supposed to finish constructing the pipeline project, the parties agree that under SJL's contract, SJL should have finished the pipeline project before April 2016. Moreover, the parties agree that multiple unplanned construction delays occurred during the building of the pipeline project. Yet, the parties have always disagreed about who caused the unplanned construction delays and should therefore bear the cost of those delays.

Ultimately, the parties' dispute came to a head in August 2016. At that time, SJL submitted project change requests to WaterOne. In those change requests, SJL alleged that it incurred $140,698.87 in extra costs because of unplanned construction delays caused by WaterOne in two ways: First, SJL alleged that WaterOne caused the unplanned construction delays by negligently approving Black & Veatch's project plans despite those plans containing certain inaccuracies. Second, SJL alleged that WaterOne caused the unplanned construction delays by unilaterally altering Black & Veatch's project plans midway through construction.

WaterOne, however, denied SJL's post-project change requests because it alleged that SJL created its "post-project change requests . . . after the fact, in an effort to avoid assessment of liquidated damages" for not timely completing the pipeline project. In addition, WaterOne alleged that SJL, through its poor workmanship, had caused the disputed construction delays. Thus, WaterOne did not pay SJL the requested $140,698.87 in change request costs. Additionally, because it concluded that SJL contractually owed it $612,000 in liquidated damages for the construction delays, WaterOne kept the contract retention money, which totaled $554,837.11.

3

*The Lawsuit*

Because WaterOne refused to pay the costs associated with SJL's post-project change order requests and withheld the contract retention money, SJL sued WaterOne in December 2016. In its petition, SJL asserted that by denying its change order requests and by keeping the contract retention money, WaterOne breached its contract, breached its warranties, and breached its duty of good faith and fair dealing. SJL also asserted that because WaterOne caused the construction delays and thus wrongly denied its change order requests and kept the contract retention money, it was entitled to payment of the $140,698.87 in costs associated with its change order requests and $554,837.11 in contract retention money under the doctrines of quantum meruit, promissory estoppel, and negligent misrepresentation. SJL also made an action on account claim.

In February 2017, WaterOne answered SJL's petition by denying all wrongdoing. It then filed a counterclaim against SJL. In its counterclaim, WaterOne argued that SJL's failure to timely complete the pipeline project constituted a breach of contract that entitled it to $612,000 in liquidated damages and more than $416,510 in actual damages.

Afterwards, SJL answered WaterOne's counterclaim by denying all wrongdoing. And in its answer, SJL further asserted that because it was WaterOne, not itself, that caused the disputed pipeline project construction delays, WaterOne's underlying breach of contract counterclaim was meritless. So SJL argued that WaterOne should bear any costs stemming from the disputed pipeline project construction delays.

*The Discovery Disputes*

In its first request for document production, WaterOne asked SJL for its full pipeline projects job file as well as all e-mails within its employees' e-mail accounts and all text messages on its employees' company-issued cell phones, including internal

correspondences, in which its employees discussed the following issues: (1) discussing issues regarding "'increased costs on the project'" or "additional compensation" requests; (2) discussing issues with time extension requests; (3) discussing conditions encountered that were not included in the contract documents or that were different from the contract documents; (4) discussing work sequence and operations that it believes WaterOne "'authorized, directed, or ca[u]sed'"; (5) discussing WaterOne's or WaterOne's representatives' "changes and/or alterations . . . to the scope and character of the work"; (6) discussing WaterOne's or WaterOne's representatives' "'fail[ure] to effectuate timely means to mitigate' the alterations, changes, obstructions and/or impediments"; (7) discussing "any instance wherein [it] contend[s] WaterOne 'intentionally and purposely administered the Contract in a devious or self-interested manner'"; (8) discussing "any instance wherein [it] contend[s] WaterOne "'delay[ed] and hinder[ed] Contract performance in order to impose liquidated damages and reduce the Contract Price'"; (9) discussing "any instance wherein [it] contend[s] WaterOne intentionally or negligently communicated information [to] influence [its] actions"; and (10) discussing any instances where it alleges WaterOne made demands inconsistent with the law. Although WaterOne did not specifically request SJL's internal communications when asking, WaterOne also requested that SJL turn over any communications, including e-mails, wherein it "provided WaterOne or [Black & Veatch] with notice of or information regarding issues with changed conditions on the project," it "provided WaterOne or [Black & Veatch] with notice of or information regarding issues with increased costs on the project," and it "requested time extensions from WaterOne or [Black & Veatch]" upon "advis[ing] [it] of issues with changed conditions [and] increased costs."

SJL responded to WaterOne's first request for document production on March 27, 2017. In its response, SJL lodged no objections to any of the preceding document production requests from WaterOne. Instead, in response to those document production requests, SJL simply stated, "All documents responsive to this request will be produced." In addition to document production requests explicitly asking that e-mails be produced,

5

WaterOne also made general document requests for any documents involving many pipeline project subjects, including SJL's pre-bid requests for clarification, SJL's pipeline project start date, and SJL's mitigation efforts. As with the preceding requests, SJL answered WaterOne's more general document requests by saying, "All documents responsive to this request will be produced."

After SJL responded to WaterOne's first request for document production, the trial court entered a case management order. Under this April 2017 case management order, the parties had to complete discovery no later than March 12, 2018.

Next, between May 2017 and July 2017, it seems the parties engaged in settlement negotiations. But by early August 2017, those settlement negotiations had failed. It was at this point when WaterOne sent SJL a "golden rule" letter. In its golden rule letter, WaterOne alleged that SJL had not complied with nearly 30 of its document production requests. WaterOne explained that although SJL had responded that it would produce "[a]ll documents responsive" to its request for the "full job file," it was apparent to WaterOne that SJL had not turned over many of the responsive documents within the job file. It explained that although it knew SJL provided its employees with cell phones, it had yet to receive any SJL employees' project-related text messages as part of discovery. Additionally, it noted the following irregularities with the e-mails that SJL had thus far produced:

> "Based on our review of the email correspondence your client produced in this case, we are concerned that a large number of responsive electronic communications have not been produced. As one example, while there is an extremely high volume of internal and external email correspondence related to the subject projects produced for 2014 and January/February of 2015, there are only a handful of emails produced after March and April 2015. As you are aware, the work that occurred from July 2015 forward is a key issue in this case, in that it is WaterOne's position that at that time, S.J. Louis discovered

6

significant issues with the work of its employees which caused serious problems when it came time to clean and test the pipe."

As a result, in its golden rule letter, WaterOne asked SJL to do the following: (1) to clarify its process for searching its employees' e-mail accounts by explaining whose e-mail accounts it searched and for what terms; (2) to otherwise fully comply with its e-mail production requests; (3) to clarify if it had any employee text messages sent on company-issued cell phones that were responsive to any of its document requests; and (4) if so, to provide it with those text messages as part of discovery.

About a month later, in early September 2017, SJL responded to WaterOne's golden rule letter by asserting that it had adequately complied with WaterOne's job file, e-mail, and text message production requests. Concerning its employees' pipeline project e-mails, SJL simply told WaterOne that it had "produced *all the email files* [that] its employees kept for these projects," with the exception of privileged material. (Emphasis added.) SJL then told WaterOne that if WaterOne had "search terms [it] would like [it] to consider running on its email files[,] please send them to [it] and it will consider [searching its employees' e-mails for those terms]." Concerning text messages, SJL simply told WaterOne that it did "not have access to its employees' text[] messages."

Next, in mid-September 2017, WaterOne sent SJL a letter stating that SJL's response to its golden rule letter did not resolve its concerns about SJL's compliance with its document production requests. Then, it warned SJL that unless it resolved this concern to its satisfaction, it would file a motion to compel its compliance with its document production requests. SJL, however, again responded that it had adequately complied with WaterOne's document production requests. Also, in addressing WaterOne's request to clarify whose e-mail accounts it searched and for what terms, SJL asserted that "the names of the individuals from whom [it] collected e-mails should be apparent from the e-mails themselves."

7

Because it was dissatisfied with this response, on September 26, 2017, WaterOne moved the trial court to compel SJL's compliance with its discovery requests. In its motion, WaterOne repeated the arguments in its golden rule letter. It added that since sending SJL its golden rule letter, it had reviewed Black & Veatch's pipeline project e-mails and found 20 pipeline project e-mails between Black & Veatch's and SJL's employees that SJL had not turned over during discovery that were responsive to its document production requests. This included e-mails titled "Progress Meeting" and "Liquidated Damages." It further added that SJL's response regarding its efforts to retrieve any pipeline project-related text messages from its employees' company-issued cell phones was inadequate. Thus, WaterOne asked the trial court to compel SJL to do the following: (1) to identify all employees whose e-mail accounts were searched; (2) to identify what terms were used to search those employees' e-mail accounts; (3) to identify what e-mail boxes were reviewed when searching those employees' e-mail accounts; (4) to produce its "employee text messages related to the subject projects"; and (5) to provide it with a privilege log, listing any documents SJL did not turn over during discovery because it contained privileged information.

On October 10, 2017, SJL responded by asking the trial court to deny WaterOne's motion to compel. As for WaterOne's complaints about its compliance with its document production requests, SJL asserted that it had produced all electronic discovery as requested by WaterOne:

> "The second part of WaterOne's 'incomplete job file' argument is that SJL has not produced all relevant email correspondence (and text messages) that are 'within its care, custody, and control.' Hereto, WaterOne uses anecdotal evidence to attempt to prove to the Court that SJL has improperly withheld emails. SJL has produced all emails it deems responsive to WaterOne's requests. SJL [has] offered to run another search for emails and [has] requested that WaterOne provide SJL with search terms. WaterOne refused.

"In order to respond to WaterOne's document requests, Mr. Phillips Vallakalil, SJL's General Counsel, got the list of employees who were primarily involved with the management, coordination and oversight of the work on both the projects, coordinated with [SJL's] IT department to pull the emails for those individuals, did a privilege check, *and produced all non-privileged emails to WaterOne*. SJL has satisfied its good faith and due diligence obligations to produce [the] electronic discovery requested by WaterOne. As set forth above, it would be wrong to infer, as WaterOne would have this Court do, that a missing email means it was withheld or otherwise intentionally not produced. SJL has taken reasonable steps to produce all responsive emails." (Emphasis added.)

Next, on October 19, 2017, the trial court held a hearing on WaterOne's motion to compel. At the hearing, SJL explained that each time it had responded to WaterOne's discovery requests by stating that "[a]ll documents responsive to this request will be produced," it implicitly meant that it "[would] produce everything that [it] deem[ed] relevant to what the claims are." When the trial court explained that it was "at a bit of a loss because [it could] see there [was] a gap" between the e-mails SJL had thus far produced and the e-mails Black & Veatch had on the pipeline project, Vallakalil told the trial court that "[*a*]*ll of the E-mail communications from all of the supervisors on the job . . .* [*had*] *been produced irrespective of the no relevance or not*." (Emphasis added.) He continued by saying that when SJL provided WaterOne with the pipeline project e-mails, SJL "[*g*]*ave* [*WaterOne*] *the whole thing*." (Emphasis added.)

After Vallakalil said the preceding, WaterOne's counsel, Michelle Stewart, responded that "it [was] almost impossible" that what Vallakalil just said about the e-mail discovery "[was] accurate" based on its review of Black & Veatch's pipeline project e-mails. It was at this point that the trial court, Stewart, Vallakalil, and SJL's national counsel—John DiBiasi—had the following exchange:

"THE COURT:  *I don't think* [*SJL's employees' email accounts*] *were searched, though.*

9

"MS. STEWART: *I don't think so either*. I am very concerned about that. Then[,] in response to the motion to compel, S.J. Louis' general counsel reviewed . . . individuals primarily involved without telling us who those people were and produced E-mails it deemed responsive to Water One's request. That is what they responded in their response to the motion to compel . . . .

"Again, we get back to this whole thing. I don't know and I can't accept that all E-mail inboxes were searched and that everything was provided to us because what we have just—it just does not support that statement.

"THE COURT: Well, I think . . . the response is deemed responsive to the request. We can look at a specific request and if an E-mail fits under that category, *then it needs to be produced*. And to say that we produce things that are deemed responsive to the request, we should all be on the same page. I think where we have a breakdown here is since there have been many E-mails identified which, again, I can go back—but this is really not my job—and see which of those E-mails correspond to a category that has been requested, *then my assumption is going to be that those weren't produced because searches weren't made of those people's mailboxes. Because if they were, then we have got a bigger problem of how come in the sweep*[,] *those E-mails didn't get produced*.

"So for example, Ryan Blake, Jordan Vaughn, Eric Wilby, Lawrence White— were those people's mailboxes searched?

"MR. VALLAKALIL: Yes, Your Honor. Those are the project managers and project coordinators. *All of them on our server have been produced.*

"THE COURT: Okay. How come [Ms. Stewart has] identified E-mails of communications between either their client and/or Black & Veatch and the plaintiff for which these individuals were either recipients or carbon copied and in the production from you, those E-mails weren't produced?

"MR. VALLAKALIL: *Then*[,] *it isn't on our server*. Then[,] it is just not on our server. *Everything on our server has been produced*. But also remember that we did not instruct anybody not to delete or to delete. We did not tell anybody anything. So[,] *whatever is on the server has been produced*.

. . . .

"MR. DIBIASI: Your Honor, let me offer this. We will go back and *search again* for all of those people related to this job.

"MS. STEWART: Names?

"MR. DIBIASI: *We will do it again*.

10

"THE COURT: You need to identify, then, for Ms. Stewart so we don't have a miscommunication on who all of the people are.

"MR. DIBIASI: Before we do it, I will be happy to meet with Ms. Stewart. *We will come up with the names and search terms and we will run it again so that we can move on.*

"THE COURT: Okay.

"MS. STEWART: That is acceptable, Your Honor.

"THE COURT: Okay." (Emphases added.)

After the parties agreed that SJL would search its employees' e-mail accounts after meeting with WaterOne to "come up with the name and search terms" so the parties could "move on," the trial court addressed WaterOne's argument that SJL had not complied with its text message production request by producing its employees' text messages about the pipeline project. When the trial court raised this issue, Vallakalil explained that since SJL had completed the pipeline project, SJL had changed its cell phone service provider. Vallakalil then explained that in attempting to comply with WaterOne's discovery requests, SJL had contacted its former cell phone service provider to determine if it had access to its employees' old text messages. Vallakalil, however, alleged that its former cell phone service provider had told it that it does not archive its former customers' old text messages. As a result, in response to the trial court's questioning, SJL told the trial court that it had tried but failed to find any text messages about the pipeline project sent by its employees on company-issued cell phones.

At this point, Stewart responded that this was the first time WaterOne had ever heard that SJL had tried but failed to find any pipeline project text messages sent by its employees on company-issued cell phones. Because the trial court agreed that SJL's documentation of its efforts to find its employees' pipeline project-related text messages was inadequate, the trial court ordered SJL "to supplement [its] responses to discovery to identify what [it] ha[d] done to provide that information."

11

Afterwards, on October 26, 2017, the trial court entered an order granting WaterOne's motion to compel. In its order to compel, the trial court specifically required SJL to comply with the following discovery orders within 30 days, that is, no later than November 27, 2017: (1) to "supplement its answer to Interrogatory No. 3 to identify the employees involved in preparation of the bid and provide a description of their role in its preparation"; (2) to "supplement its answer to Interrogatory No. 14 to describe the nature of the supervisory employee's role/responsibilities/duties on the project"; (3) to "make full production of its job file . . . or in the alternative, make the files available for [WaterOne's] inspection and copying"; (4) to "provide . . . verification [of] its efforts to search for and gather text messages of its employees who worked on the projects"; (5) to "identify the names of all persons whose email boxes were searched to respond to discovery as well as the search terms used to conduct th[o]se searches"; and (6) to "conduct another search of all responsive emails upon the Parties conferring and developing the scope of the search, including persons and search terms." On the trial court order to supplement its answer to Interrogatory No. 14 to describe the roles and responsibilities of its supervisory employees, the trial court specifically ruled that SJL's supervising employees would include all "project superintendent(s), team leaders/foreman, project managers, project coordinators and area managers."

On November 2, 2017, DiBiasi, on behalf of SJL, e-mailed WaterOne about the search parameters it used to find what it deemed to be all responsive pipeline project e-mails. DiBiasi explained that SJL searched five pipeline project managers' and one pipeline project coordinator's e-mail accounts for the terms "WaterOne," "Job #51403," "Shellhorn," and "Sievert." Dibiasi further explained that in conducting its search, it limited its searches of those employees' e-mail accounts to specific dates that it believed those employees were working on the pipeline project. DiBiasi then asserted that SJL believed that it had produced "the vast majority" of the responsive pipeline project e-mail exchanges by using the above e-mail search parameters.

12

Four days later, on November 6, 2017, Stewart, on behalf of WaterOne, e-mailed DiBiasi that WaterOne believed SJL needed to search 39 of its employees' e-mail accounts for e-mails sent between September 2013 and December 2016 for 34 separate terms to "capture everything that [was] responsive" to its e-mail production requests. Of note, it seems WaterOne primarily asked SJL to search the e-mail accounts of SJL employees that would be considered "supervising employees" under the trial court's compel order. Also, it is undisputed that during the pipeline project, SJL employed 87 people, with 35 of those people serving in "management roles" on the pipeline project.

Nevertheless, neither DiBiasi nor anyone else on behalf of SJL immediately responded to WaterOne's e-mail detailing its proposed e-mail search parameters. As a result, on November 17, 2017, Stewart sent DiBiasi a follow-up e-mail, reminding him that WaterOne was waiting for SJL's response.

Two days later, on November 19, 2017, DiBiasi responded to Stewart's follow-up e-mail. But DiBiasi's response did not address WaterOne's proposed e-mail search parameters. Instead, in DiBiasi's response, he told Stewart that SJL had "downloaded all of the electronic project files." He then told Stewart that SJL would likely produce those electronic project files within the next two weeks. In addition, Dibiasi told SJL that "to the extent [that] the Court order ha[d] ordered [it] to produce information that SJL disputed as either relevant or otherwise . . . *such non-privileged information* [*would*] *be provided*, to the extent it exist[ed], within SJL's production of its project file." (Emphasis added.) Yet, DiBiasi then told Stewart that SJL wanted to take the next "week +/-" to see if the parties could reach a global settlement that rendered WaterOne's discovery production requests moot.

On November 21, 2017, Stewart responded to DiBiasi's latest e-mail by explaining that the trial court's March 12, 2018 discovery deadline was too close for SJL to delay complying with the trial court's compel order in the hopes of settling the case. She then

repeated that WaterOne had not received any objections or suggested revisions to its proposed e-mail search parameters. She thus explained that under the assumption SJL had no objections to WaterOne's proposed e-mail search parameters, it had many questions for SJL, including when SJL would be producing any responsive e-mails that it did not turn over following its first e-mail production.

On November 30, 2017, Stewart e-mailed DiBiasi, telling him that if SJL did not respond to the preceding e-mail by the end of the day, WaterOne would ask the trial court to sanction SJL for not complying with the compel order. After sending this e-mail, it seems that Stewart and DiBiasi spoke with each other by phone later that day because the next day—December 1, 2017—DiBiasi e-mailed Stewart his takeaways from their conversation the day prior. In this e-mail, DiBiasi also explained SJL's future plans to comply with the trial court's compel order:

"In order to minimize costs, *SJL is handling the email production in-house*. Because [o]f the huge volume of emails that exist[,] this is going to take some time. You have requested emails from 38 [*sic*] SJL employees and have asked that we run 35 [*sic*] searches on those individuals' emails. SJL has gathered the emails and is in the process of loading and searching. SJL simply does not have the capability to do this quickly in-house. *We agreed that SJL will do a rolling production based on each individual's email – beginning with the person you feel is most relevant – you will provide us that list. If you want to speed things up[,] we can get a quote to have a vendor do the work. Please let us know if you would like us to do that." (Emphases added.)

Later that day, Stewart responded to DiBiasi's e-mail, stating that WaterOne "appreciate[d] the effort that [went] into producing the email[s]," but WaterOne would "not bear the cost of having a third party vendor complete [the e-mail production] work." Stewart then requested SJL "to do whatever [was] necessary to comply with the Court's Order to Compel production," noting that SJL had already failed to produce the requested documents by the trial court's November 27, 2017 deadline.

14

Nevertheless, when DiBiasi responded to Stewart's e-mail even later that same day, he now asserted that SJL believed that the scope of WaterOne's proposed e-mail search was unduly burdensome. DiBiasi thus asked Stewart if WaterOne would allow it to search fewer employee e-mail accounts for fewer search terms.

It does not seem that Stewart or anyone else representing WaterOne directly responded to DiBiasi's request to search fewer employee e-mail accounts for fewer search terms. Instead, on December 18, 2017, Stewart e-mailed DiBiasi, asking him to advise her on SJL's discovery progress. Later that day, DiBiasi responded to Stewart's e-mail by stating that the e-mail search "process ha[d] been and continue[d] to be unduly burdensome on SJL's resources given the scope and breadth of what WaterOne ha[d] requested." DiBiasi told Stewart that because WaterOne's e-mail search parameters were unduly burdensome, SJL would hire an outside vendor to complete the e-mail search production at WaterOne's cost. DiBiasi ended his response by telling Stewart that he would "send [her] a copy of the quote once [SJL] receive[d] it." Almost immediately after DiBiasi sent this e-mail, Stewart responded by repeating that "WaterOne [would] not be bearing [the e-mail search production] cost."

Even so, two days later, on December 21, 2017, DiBiasi e-mailed Stewart an outside vendor estimate. The outside vendor estimate stated that it would cost $34,570 to complete the e-mail search under WaterOne's proposed parameters. DiBiasi further warned Stewart that unless WaterOne paid for the outside vendor costs or limited the scope of its e-mail search parameters, it would be filing a protective order against WaterOne's e-mail production requests.

Because the parties never reached an agreement on the preceding discovery issues, on December 28, 2017, the parties filed their competing motions with the trial court. Around 2 p.m. that day, WaterOne moved the trial court to impose sanctions upon SJL

for not complying with several aspects of its order to compel discovery. In its motion, WaterOne outlined its communications with SJL since the trial court had entered the order to compel. WaterOne stressed that although SJL initially had no objections to its requests for e-mail production or to its proposed e-mail search parameters, SJL had recently refused to complete the e-mail search, alleging that it was unduly burdensome. WaterOne then asserted that the trial court should reject SJL's unduly burdensome argument because SJL "cannot now, some 10 months after discovery was initially served, state an objection based on the breadth and/or the burden of the request."

In its motion, WaterOne also pointed to SJL's previous representations that it had produced all responsive e-mails to its e-mail production requests. WaterOne noted that despite those prior representations, after the trial court entered the order to compel, SJL revealed that it had searched just a fraction of its supervising employees' e-mail accounts for just four pipeline project-related terms. Based on this, as well as (1) SJL's failure to provide any verification of its efforts to locate its employees' pipeline project text messages sent on company-issued cell phones and (2) SJL's failure to conduct the e-mail search under its proposed parameters, WaterOne asserted that SJL had intentionally violated the trial court's compel order. It thus asserted that the trial court should sanction SJL under K.S.A. 2017 Supp. 60-237(b)(2). In particular, WaterOne argued that SJL's deliberate violation of the trial court's compel order warranted dismissing SJL's claims, striking SJL's defenses, entering default judgment in its favor on its liquidated damages counterclaim, and ordering SJL to pay its attorney fees associated with the costs of preparing and filing its motions to compel and for sanctions.

About 30 minutes after WaterOne moved for sanctions, SJL moved the trial court for a protective order against WaterOne's e-mail production requests. In its motion, SJL argued that the trial court should not force it to search its employees' e-mail accounts under WaterOne's proposed e-mail search parameters because those parameters were

16

unduly burdensome as meant under K.S.A. 2017 Supp. 60-226(b)(2)(B) for the following reasons:

"*In a discovery request, WaterOne asked SJL for all emails having anything to do with the Projects*. Despite the relatively limited scope of the claims made in the lawsuit, SJL attempted to comply with the request. SJL collected all of its employees' emails that were contained in the specific email sub-files for the Projects. Those emails were reviewed for privilege and produced to WaterOne along with a privilege log.

"This was not good enough for WaterOne. In an effort to bury SJL in discovery costs (because WaterOne is playing with the public's money), WaterOne demanded that SJL: (1) collect all emails from 39 designated employees beginning in September, 2013 and ending in December, 2016 (**_ALL_** emails – not just those related to these Projects – but the entirety of each employee's 'Inbox; Inbox sub-files; Deleted Items, Sent Items, [and] Archived emails'); (2) assemble all of these emails on a platform that can be searched; and (3) run 36 [*sic*] single-word searches on all of the emails collected. [Citation omitted.] Then, of course, SJL would have to perform a privilege check on all of the 'responsive' emails before they could be produced.

"In a good-faith effort to comply with WaterOne's demands, SJL began the process of gathering the emails. SJL collected ALL email files for the 39 employees [that] WaterOne requested for the timeframe . . . . That is approximately 250 GB of .pst files. Upon gathering the 250 GB of email files[,] it became apparent to SJL that it does not have either the manpower or the IT capability to perform such an enormous task. SJL contacted an outside vendor and asked for a quote to do the work demanded by WaterOne. The quote was for $34,570. [Citation omitted.] Obviously, that does not include the expense for reviewing all 'responsive' emails for privilege (which has already been done for the emails produced but would have to be done all over again). SJL estimates by the time the documents are produced[,] it will cost SJL more than $100,000 to meet the demands of WaterOne. All this for a relatively simple, straightforward $700,000 case. SJL has already reasonably complied with its discovery obligations [and] should not have to incur such an enormous expense." (Emphasis added).

17

Alternatively, SJL asked the trial court to order WaterOne to bear the costs of an outside vendor to conduct the search under WaterOne's proposed e-mail search parameters.

On January 4, 2018, WaterOne filed a memorandum detailing its objections to SJL's motion for a protective order. In this memorandum, WaterOne generally argued that the trial court should deny SJL's motion for a protective order for the same reasons why it should grant its motion for sanctions. WaterOne also asserted that it would be unfair if the trial court granted SJL's motion for a protective order because it had complied with SJL's extensive discovery requests.

Several days later, on January 11, 2018, SJL filed a memorandum in opposition to WaterOne's motion for sanctions and in further support of its motion for a protective order. In its memorandum, outside of generally repeating that it made a good-faith effort to comply with the trial court's order to compel, SJL asserted that it did "nothing sanctionable" by not searching its employees' e-mail accounts for pipeline project e-mails under WaterOne's proposed parameters because parties do not have to comply with unreasonable discovery requests.

On February 16, 2018, the trial court held a hearing on the parties' competing motions. At the hearing, the parties repeated their arguments in their respective motions and filings. Additionally, upon the trial court's questioning, DiBiasi asserted that when SJL responded that it would produce "all responsive documents," SJL did not mean to imply that it would produce "every E-mail that we had because we told them the people we searched." The trial court, however, rejected SJL's argument that it had not agreed to produce all responsive e-mails to SJL's broad e-mail and text message production requests, issuing the following ruling from the bench at the end of the hearing:

18

"Based upon the information presented at the October 19th motion to compel hearing, it appeared that all E-mail responses had not been produced. The Court ruled that plaintiff shall identify the names of all persons whose E-mailboxes were searched to respond to discovery as well as the search terms used to conduct these searches. Plaintiff shall conduct another search of all responsive E-mails upon the parties conferring and developing the scope of the search, including persons and search terms.

"This was set out in the journal entry entered by the Court on October 26th, 2017. The journal entry provided that and it was therefore ordered, adjudged and decreed that defendant's motion to compel is granted and plaintiff shall fully respond to the aforementioned discovery within 30 days of this order.

"The parties met and conferred on October 25th, 2017. On November 2nd, 2017, plaintiff's counsel E-mailed counsel for defendant advising that in its prior production, plaintiff had only downloaded E-mails of six individuals who it deemed to be primarily supervisors overseeing the Water One project who they had thought would have the vast majority of the exchanges during the project.

"Only four search terms were utilized. As defendant points out, plaintiff has identified 87 of its employees involved in the work on these projects, 35 of whom were in management roles, meaning that over 80 percent of the individuals who worked on the project may have had E-mails that were never searched, although plaintiff's responses to requests for production back in March of 2017 had identified that all documents responsive to this request will be produced and despite the September 1st, 2017, representation by plaintiff's counsel that plaintiff had produced all of the E-mail files its employees kept for these projects with the exception of privilege[d] communications with its in-house counsel beginning in late August of 2015. Such was not in fact true.

"On November 6th, 2017, counsel for Water One identified management individuals of plaintiff for whom searches were requested with the use of 34 search terms. Further follow-up E-mails from Water One's counsel inquired about the E-mail search requests.

"On December 1st, 2017, plaintiff's counsel sent an E-mail to defendant's counsel advising that plaintiff was handling the E-mail production in-house and that it was going to take some time because plaintiff didn't have the capability of doing it quickly in-house. Plaintiff's counsel advised that if you want to speed things up, we can get a quote from the vendor to do the work. Water One would not agree to pay for the cost of an outside vendor.

19

"On December 18th, 2017, plaintiff's counsel advised defense counsel through an E-mail that the process is unduly burdensome on plaintiff in light of what is at stake in the dispute. Plaintiff doesn't have the resources and the need to go to an outside vendor. Plaintiff expects Water One to cover the vendor's fees and expenses and a quote will be sent when received. Water One's counsel responded the same day advising that it would not be bearing this cost. A few days thereafter, plaintiff's counsel sent Water One's counsel a quote for the cost of E-mail data retrieval in the amount of $34,000.

"Plaintiff's March 2017 responses to written requests for production made no objections to the scope or burden in the requested production. Instead[,] it responded that all documents responsive to this request will be produced. Now almost a year later and less than a month before discovery is set to close, a little more than a month before dispositive motions are required to be filed, the requested documents have yet to be produced.

"Under K.S.A. 60-234(b)(2)(B), the response for a request for production must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request including the reasons. Production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.

"Although the E-mails and text messages are the current focus of plaintiff's failure to seasonably provide discovery responses in contravention of the Court's October 26th, 2017 order, the Court would note that at the hearing on the motion to compel, it was apparent that plaintiff had failed to comply with a complete production of project documents and its initial production appears to have misrepresented the scope of the production claiming full project files had been produced when such was not the case.

"The Court finds that plaintiff's counsel misrepresented to defendant's counsel that all of the E-mail files its employees kept for these projects were produced, the only limited exception being privileged communications. The plaintiff's in-house counsel who has been admitted pro hac vice in the present litigation was copied on this communication and did not correct this representation.

"The parties should know Kansas Supreme Court Rule 3.4 provides that a lawyer shall not unlawfully obstruct another party's access to evidence. It was only after the Court ordered plaintiff to identify the individuals whose E-mail accounts were searched did it become clear that only a small number of E-mail accounts had been searched, and plaintiff could not have properly represented that all responsive documents had been

20

produced. Contrary to plaintiff's assertion, the issues raised in this litigation are far from a simple dispute. In addition, the Court has already pointed out the damages are significant with each party seeking over $600,000 from the other.

"Discovery is intended to secure necessary information so that parties can adequately prepare in advance and defend their claims at trial. There is a normal progression of discovery in most cases where all of the pertinent documents are first obtained so that the necessary areas of inquiry and subsequent depositions can be determined and complete information can be provided to experts so that expert disclosures are complete and accurate.

"When initial production is improperly thwarted, a party may be unfairly impacted. In this case, plaintiff has failed to provide necessary discovery in a timely manner unfairly impacting defendant's ability to both prosecute and defend the claims. Compliance with the scheduling order set by the Court as agreed to by the parties is no longer possible. At the October 19th, 2017 hearing, the Court granted the motion to compel and ruled that the requested discovery be produced in 30 days. Such did not occur within 30 days of the hearing or 30 days of the October 26th, 2017 journal entry.

"Nearly two months passed from the date of the Court's ruling before plaintiff's counsel raised for the first time an objection to the scope of the discovery sought by plaintiff which again, to be clear, had been propounded back in February of 2017 and in response the following month, plaintiff agreed to produce all responsive documents without objection. Any objection has long since been waived.

"The Court does not regard defendant's request for searches of 39 individual E-mail accounts utilizing 34 search terms to be an expansion of what defendant had initially requested and plaintiff had agreed to produce in March of 2017. If anything, these requests following the Court's orders at the motion to compel hearing limited the scope of what otherwise would have covered all project-related E-mails of all individuals who worked on these projects.

"The time for plaintiff to have sought a protective order has long since passed. If an undue burden existed, it should have been raised in March of 2017 as well as within 30 days of the Court's order granting defendant's motion to compel. The claim of undue burden now raised is not properly supported by anything—anything of evidentiary value.

"The Court would further note defendant has borne the cost of responding to electronic discovery and the cost for meeting its own production as well as that of the other party should not rest with the defendant alone.

"As of December 28, 2017, and as represented to the Court today, the date of defendant's motion for sanctions, plaintiff has failed to provide verification of its efforts to search for and gather text messages of its employees. Again, this was ordered by the Court to occur within 30 days of the order. The Court therefore denies plaintiff's request for a protective order.

"The Court takes seriously the requests for sanctions. As I have evaluated this case very closely and reviewed in detail all of the submissions, the Court finds that sanctions are appropriate for plaintiff's non-compliance with the Court's October 26th, 2017 order and the failure to timely respond to discover for 11 months and as a result, misrepresentation of discovery that had been provided pursuant to K.S.A. 60-237(b)(2).

"The Court hereby grants defendant's motion for sanctions and dismisses plaintiff's claims against the defendant, strikes its defenses to Water One's claims for liquidated damages and enters default judgment against plaintiff on Water One's claims for liquidated damages and enters an order requiring plaintiff to pay attorneys' fees for the cost of preparing the initial motion to compel and the filing and preparation of the present motion for sanctions."

After the trial court filed its journal entry detailing its oral rulings, SJL moved under K.S.A. 2017 Supp. 60-259 and K.S.A. 2017 Supp. 60-260(b), asking the trial court to reconsider its order imposing sanctions for two reasons: First, SJL argued that the trial court should reconsider its previous orders because WaterOne never asked for and the trial court never ordered it to produce all pipeline project e-mails. Instead, according to SJL, WaterOne asked it to produce only "certain narrow categories of documents relevant to specific allegations contained in [its] petition." And the trial court merely ordered it to search its employees' e-mail accounts for additional responsive e-mails after the parties agreed to search parameters. SJL thus argued that the trial court lacked statutory authority under K.S.A. 2017 Supp. 60-237(b)(2) to impose any sanctions upon it because no order required it to produce all pipeline project e-mails. Second, SJL argued that the trial court should reconsider its previous orders because even if WaterOne had requested all pipeline project e-mails and the trial court had ordered it to produce all pipeline project e-mails, the extreme sanctions of dismissing its case, striking its defenses, and entering default

22

judgment in WaterOne's favor were unwarranted under the facts of its case. It added that when imposing those sanctions, the trial court cited to no caselaw, including the factor test identified by our Supreme Court in *Canaan v. Bartee*, 272 Kan. 720, 727, 35 P.3d 841 (2001), for determining whether a party's discovery order violations warrant the severest sanctions. As a result, SJL also argued that the trial court's failure to consider the *Canaan* factor test established that the trial court improvidently imposed those sanctions.

After SJL moved the trial court to reconsider its imposition of sanctions, WaterOne filed a memorandum opposing SJL's motion. In essence, WaterOne argued that the trial court properly dismissed SJL's claims, struck SJL's defenses, entered default judgment in its favor, and required SJL to pay its attorney fees associated with the costs of preparing and filing its motions to compel and for sanctions because SJL deliberately violated the trial court's compel order. Also, although WaterOne recognized that the trial court had not explicitly considered the *Canaan* factor test, it asserted that a review of the trial court's oral rulings established that it "adequately considered and evaluated [those] facts pertinent to each of [the *Canaan*] factors." It then concluded that if the trial court amended its prior order, it should only do so to explicitly consider the *Canaan* factor test.

Eventually, the trial court held a hearing on SJL's motion to reconsider. At the end of the hearing, the trial court took SJL's motion to reconsider under advisement. The trial court, however, denied SJL's motion to reconsider its previous orders.

In doing so, the trial court repeated the procedural history of SJL's lawsuit as it related to discovery. It then found that during discovery, SJL committed "various discovery abuses." This included SJL's "most egregious violation" of stating that all responsive pipeline project e-mails had been produced when SJL had in fact searched only a fraction of its supervising employees' e-mail accounts for just four search terms. Then, the trial court disagreed with SJL's contention that WaterOne never actually requested all pipeline project e-mails and that it never ordered SJL to produce all pipeline

23

project e-mails. The trial court explained that the only reasonable interpretation of WaterOne's requests, its orders, and SJL's responses throughout the case was that SJL needed to produce all pipeline project e-mails that had any bearing on the parties' respective claims found during the supplemental e-mail search.

Finally, the trial court addressed its previous failure to explicitly address the *Canaan* factor test:

> "The Court considered the *Canaan* factors when entering its order on the motion for sanctions, but [it] did not explicitly go through the factors when rendering its ruling. The Court will only amend its order on sanctions to remedy this omission. Relating to the first *Canaan* factor, the discoverable material relates to a dispositive issue in the case, particularly with respect to defendant's counterclaims. Defendant wanted the project file, including e-mail correspondence, to investigate whether plaintiff was negligent in timely selecting, approving, and scheduling contractors. Internal e-mails and employee text messages could have been relevant to the adequacy of personnel on the job site, workmanship by employees, job supervision, etc. The reason for the project's alleged delay is relevant to defendant's counterclaims, which seek liquidated damages for delays.
>
> "The second element in *Canaan* is whether alternative sanctions to protect the party seeking discovery were available. Clearly, other sanctions exist and are available, but what this factor really asks a Court to consider is whether lesser sanctions are clearly insufficient to accomplish the desired outcome. . . .
>
> "Other sanctions were insufficient to protect Defendant from further discovery abuses. Plaintiff exhibited a pattern of discovery-related misconduct that would not have been remedied by a lesser sanction. Plaintiff represented, both to defendant and to the Court, that it had turned over all relevant discovery. Defendant was forced to file a motion to compel to truly understand the extreme deficiencies of plaintiff's production. Then, in response to a court order, plaintiff persisted with deficient discovery. Defendant became aware that only a small fraction of supervisors['] e-mails had been searched, and of that small fraction, only four search terms, rather than the required number of terms almost ten times that number, had been entered. Once this came to light, plaintiff continued to frustrate the order to compel by, for the first time, introducing a hardship argument, seeking defendant to assume the costs of production, and pursuing a protective

24

order relating to discovery that the Court had already compelled. This demonstrates a flagrant disregard for discovery procedure, both before the Court's involvement in the issue and after. The Court's order on the motion to compel had no deterrent effect on plaintiff's conduct. If anything, the Court's order caused plaintiff to fight discovery with more vigor. As such, the Court will not presume that any lesser sanctions would change plaintiff's behavior or accomplish any desired outcome.

"The third factor requires an analysis of whether the requested information is cumulative. The discovery sought by defendant and ordered by the Court was not cumulative. Plaintiff only performed a search of six employees out of 35 [pipeline project supervisors'] e-mails, and only utilized four of the 35 search terms. Plaintiff performed the search on approximately 17 percent of the employees and utilized approximately 11 percent of the search terms. It is unreasonable to assert that the e-mails of the other 29 employees, subject to 31 more search terms, would lead to no new relevant evidence. Additionally, it does not appear that plaintiff made any attempt to search for and gather text messages of its employees who worked on the projects, and if plaintiff did make this attempt, it certainly did not verify it as required by the journal entry on the motion to compel. Without turning over any text messages, it cannot be assumed that all information that could have been gathered therefrom would be cumulative.

"Lastly, *Canaan* requires a Court to determine whether any good faith or excusable neglect weigh against the imposition of a sanction of dismissal. Here, plaintiff did not act in good faith, and its neglect was not excusable. . . . Plaintiff's limited participation in discovery does not excuse its repeated failure to comply with the Court's order that the limited discovery submitted by plaintiff was insufficient. Had plaintiff complied with the order to compel at that time, the insufficiency of production could be traced to excusable neglect. But plaintiff continued to provide insufficient discovery, in violation of a court order. Any neglect, at this point, cannot be excused.

"Plaintiff's motion does not make clear what grounds within K.S.A. 60-259 or K.S.A. 60-260(b) justify relief, and the Court will not grant relief under either statute. As a motion to alter or amend under K.S.A. 60-259, plaintiff has not demonstrated a manifest error of law or any newly discovered evidence which would justify reconsideration or amendment. As a motion for relief from judgment or order under K.S.A. 60-260(b), plaintiff has not demonstrated excusable neglect or any other reason that justifies relief. Plaintiff's motion is denied."

25

After the trial court entered the order denying SJL's motion to reconsider, SJL timely appealed.

*Did S.J. Louis Violate the Trial Court's Compel Order, Thus Enabling the Trial Court to Impose Sanctions Upon S.J. Louis Under K.S.A. 2017 Supp. 60-237(b)(2)?*

SJL's primary appellate argument repeats its primary argument in its motion to reconsider. SJL argues that WaterOne never asked it to produce and the trial court never ordered it to produce all pipeline project e-mails. To support this argument, SJL points to WaterOne's first request for document production and motion to compel. SJL contends that in WaterOne's first request for document production, WaterOne never asked it to produce all pipeline project e-mails; as it did below, it alleges that WaterOne instead asked it to produce "relatively narrow categories of emails." SJL then contends that in WaterOne's motion to compel, WaterOne asked it to identify the process it used to determine the scope of its first e-mail production instead of explicitly requesting production of those e-mails. As for the trial court's compel order, SJL points out that the order did not explicitly state that it had to turn over the responsive e-mails it found during the e-mail search. And for this reason, SJL asserts that the trial court's order to compel merely required it to explain how it determined the scope of its first e-mail production, to reach an agreement with WaterOne on the e-mail search parameters for its second e-mail production, and to afterwards conduct that e-mail search under the parties' agreed-upon search parameters.

SJL also alleges that it should not be punished because it made a single inadvertent comment about having "produced all the email files its employees [had] kept for [the pipeline projects]" while responding to WaterOne's golden rule letter. According to SJL, the entire basis of the trial court's finding that it had agreed to produce all e-mails responsive to WaterOne's e-mail production requests was that it had "mistakenly indicated [that] it had produced 'all' project-related emails" while responding to

26

WaterOne's golden rule letter. Although its argument is not entirely clear, it seems as if SJL contends that trial courts lack statutory authority to sanction parties for innocuous discovery order violations.

Accordingly, SJL argues that it could not have violated any compel order to produce all pipeline project e-mails for three reasons: (1) because there was no request for all pipeline project e-mails to support the trial court's entry of the compel order, (2) because the compel order otherwise did not require it to produce all pipeline project e-mails, and (3) because K.S.A. 2017 Supp. 60-237(b)(2) does not allow courts to punish parties for innocuous discovery order violations. In sum, SJL concludes that the trial court erred by imposing any sanctions upon it because absent a court order requiring production of all its employees' pipeline project e-mails, the trial court had no statutory authority to punish it under K.S.A. 2017 Supp. 60-237(b)(2).

WaterOne responds that although it might not have explicitly asked SJL to produce and the trial court might not have explicitly ordered SJL to produce all pipeline project e-mails, SJL "affirmatively stated on multiple occasions that it had produced 'all emails' to avoid further discovery." Thus, WaterOne contends that it was SJL's misrepresentations, not its specific document production requests, that were "the foundation for how the Court managed the discovery issues in this case." Alternatively, WaterOne contends that it is undisputed that SJL failed to perform the e-mail search after conferring with it to develop the e-mail search parameters, to provide verification of its efforts to locate its employees' pipeline project text messages, and to produce is entire job file. As a result, WaterOne argues that notwithstanding SJL's violation of the trial court's compel orders for e-mail production, SJL's conduct warranted the imposition of at least some sanction under K.S.A. 2017 Supp. 60-237(b)(2).

*Applicable Law*

A party may request the production of documents or electronically stored information from its opposing party under K.S.A. 2020 Supp. 60-234(a)(1) during discovery. Upon a party's document request under subsection (a)(1), the party to whom the document production request is directed "must respond in writing within 30 days after being served." K.S.A. 2020 Supp. 60-234(b)(2)(A). Also, this response "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." K.S.A. 2020 Supp. 60-234(b)(2)(B).

Nevertheless, if a "party fails to produce documents . . . as requested under K.S.A. 60-234, and amendments thereto," K.S.A. 2020 Supp. 60-237(a)(3)(B)(iv) provides that a "party seeking discovery may move for an order compelling  . . . production." Thus, if a requesting party moves to compel production of documents and evidence supports that the nonmoving party did not comply with the valid document production request, the trial court may enter an order compelling production of the disputed documents.

Also, subsection (b)(2)(A) of K.S.A. 2020 Supp. 60-237 provides that "[i]f a party or a party's officer, director or managing agent . . . fails to obey an order to provide or permit discovery, including [a compel] order under subsection (a) . . . the court where the action is pending may issue further just orders." So K.S.A. 2020 Supp. 60-237(b)(2)(A) gives the trial court the authority to sanction a party when that party violates the trial court's discovery order. Moreover, under K.S.A. 2020 Supp. 60-237(b)(2)(A)(i)-(vii), which outlines the nonexclusive list of sanctions that the trial court may impose upon a party for violating its discovery orders, courts may dismiss the violating party's claims, strike the violating party's defenses, and enter default judgment in favor of the opposing party.

28

In their respective briefs, the parties dispute the applicable standard of review. SJL contends that this court should exercise de novo review. On the other hand, WaterOne contends that appellate courts review a trial court's decision to impose sanctions under K.S.A. 2020 Supp. 60-237(b)(2) for an abuse of discretion.

Typically, appellate courts review the trial court's imposition of sanctions for a discovery order violation for an abuse of discretion. See *Schoenholz v. Hinzman*, 295 Kan. 786, 798, 289 P.3d 1155 (2012); *Canaan*, 272 Kan. at 726 (holding that the decision to impose sanctions upon a party for violating a discovery order lies within the trial court's discretion). A trial court abuses its discretion if it commits an error of law, an error of fact, or makes an otherwise unreasonable decision. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). Still, "[t]here are instances where abuse of discretion standards are more accurately characterized as questions of law requiring de novo review." *City of Arkansas City v. Sybrant*, 44 Kan. App. 2d 891, Syl. ¶ 10, 241 P.3d 581 (2010). In particular, such an instance occurs when a party's underlying argument hinges upon the trial court abusing its discretion by committing an error of law. 44 Kan. App. 2d 891, Syl. ¶ 10.

SJL's current argument involves such an instance. It requires us to evaluate whether the trial court committed an error of law by invoking K.S.A. 2020 Supp. 60-237(b)(2) to impose any sanctions upon SJL. Thus, although this court must review the trial court's decision to sanction SJL under K.S.A. 2020 Supp. 60-237(b)(2) for an abuse of discretion, to the extent that SJL specifically questions the trial court's statutory authority to sanction it under K.S.A. 2020 Supp. 60-237(b)(2), we exercise de novo review. Of additional significance, to the extent SJL disputes the trial court's fact-findings, we review the trial court's fact-findings for substantial competent evidence. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011). Substantial competent evidence exists if a reasonable person could accept the trial court's decision based on the legal and relevant evidence. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019).

*Statutory Authority to Sanction*

Having addressed the applicable law, we must now consider SJL's underlying argument that the trial court lacked statutory authority under K.S.A. 2020 Supp. 60-237(b)(2) to impose any sanctions upon it because WaterOne never requested and the trial court never ordered it to produce all pipeline project e-mails.

1) *WaterOne effectively requested that SJL produce all pipeline project e-mails that could have any relevance to the parties' lawsuit without objection from SJL.*

Although SJL correctly argues and WaterOne concedes that it did not explicitly request production of all pipeline project e-mails in its first request for document production, WaterOne's e-mail production requests were broad. WaterOne asked SJL to produce all e-mails, including those sent internally between SJL employees, involving any changes it made to the pipeline project construction plans, obstructions it caused during the pipeline project construction, misrepresentations it made during the pipeline construction, and acts of self-dealing it made during the pipeline construction. It further asked SJL to produce all e-mails addressing any communications about increased costs and time extensions. WaterOne also made general document requests, asking for any documents involving many pipeline project subjects, including SJL's pre-bid requests for clarification, SJL's pipeline project start date, and SJL's mitigation efforts. In essence, WaterOne asked SJL to produce all e-mails containing any information about why SJL failed to construct the pipeline project on schedule. As a result, although WaterOne never explicitly requested that SJL produce all pipeline project e-mails, *WaterOne effectively requested that SJL produce all pipeline project e-mails that could have had any relevance to SJL's claims, SJL's defenses, and WaterOne's liquidated damages counterclaim.*

30

This, in turn, undermines two of SJL's supporting arguments: First, throughout its brief, SJL complains that the trial court wrongly ruled that it had waived its ability to object to the scope of WaterOne's e-mail production requests by responding that it would provide "[a]ll documents responsive to" those e-mail production requests without objection. And for this reason, SJL contends that the trial court erred by denying its motion for a protective order. Yet, this argument ignores its responses to WaterOne's e-mail production requests and the plain language of K.S.A. 2020 Supp. 60-234(b)(2). Simply put, because K.S.A. 2020 Supp. 60-234(b)(2) requires a party to object to any document production request when responding to that document production request, SJL waived its ability to object to the scope of WaterOne's e-mail production requests by not objecting in its initial response.

Additionally, as addressed more fully below when considering SJL's excusable neglect arguments, even if we disregarded SJL's failure to object to WaterOne's broad e-mail production requests, at the very least, SJL should have moved for a protective order after WaterOne provided it with its proposed e-mail search parameters for the second e-mail production but before the trial court's November 27, 2017 compel order deadline. Instead, however, after WaterOne provided SJL with its proposed e-mail search parameters for the second e-mail production, SJL told WaterOne it would complete the search in-house to save costs. In total, SJL waited a full 25 days after receiving notice of WaterOne's proposed e-mail search parameters before complaining to WaterOne that those parameters were unduly burdensome. Then, it waited another 27 days to make this complaint to the trial court in its protective order motion; by that point, it was December 28, 2017.

In summary, to the extent SJL argues that the trial court erred by denying its protective order, SJL's argument is fatally flawed because its unduly burdensome objection was untimely.

31

As for SJL's second supporting argument, throughout its brief, SJL also complains about WaterOne's argument, which the trial court adopted while imposing sanctions, that its responses to WaterOne's e-mail production requests broadened the scope of those requests and its duty to produce e-mails in response to those requests. SJL notes that the trial court cited no law to support this finding. SJL further asserts that no such law exists.

SJL's argument is somewhat persuasive. Because WaterOne's actual e-mail production requests effectively requested that SJL produce all pipeline project e-mails that could have any relevance to SJL's claims, SJL's defenses, or its own counterclaim, WaterOne had, in fact, already asked SJL to turn over all potentially relevant pipeline project e-mails. As a result, no matter how SJL responded to those e-mail production requests, it could not have possibly broadened the scope of those requests. Thus, the trial court technically erred by finding that SJL's responses to WaterOne's e-mail production requests broadened the scope of WaterOne's e-mail production requests and SJL's duty to produce e-mails in response to those requests.

Nevertheless, this technical error does not entitle SJL to any relief. It is a well-known rule that when the trial court reaches the correct decision, we will affirm the trial court's decision even if it relied upon an erroneous ground to make its decision. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015). Here, SJL's argument ignores that by not objecting to WaterOne's e-mail production requests when WaterOne effectively requested that SJL produce all pipeline project e-mails that could have any relevance to the parties' respective claims and defenses, SJL had a duty to produce all responsive e-mails under K.S.A. 2020 Supp. 60-234. So even if SJL did not expand the scope of WaterOne's e-mail production requests through its responses, based on its responses to WaterOne's first request for document production, SJL still had a duty to produce all responsive pipeline project e-mails as requested by WaterOne.

*2) WaterOne's compel motion and the trial court's compel order implicitly requested production of the disputed e-mails.*

SJL's argument that neither WaterOne's compel motion nor the trial court's compel order required it to produce any responsive e-mails from its e-mail search hinges on the fact that neither WaterOne's compel motion nor the trial court's compel order explicitly stated that SJL had to produce any of the e-mails it discovered while using the parties' agreed-upon e-mail search parameters. But SJL's argument clearly ignores the underlying purpose of any motion or order to compel discovery. If a party moves to compel document production because documents it requested under K.S.A. 2020 Supp. 60-234 have not been produced, it follows that the party moved to compel document production because it wants those documents from the nonmoving party. Similarly, if a trial court enters an order to compel document production because a party requested documents under K.S.A. 2020 Supp. 60-234 but those documents have not yet been produced, it follows that the trial court has entered this order because it believes the moving party is entitled to the documents that the nonmoving party has not yet produced.

As a result, even if a party's compel motion or the trial court's compel order does not explicitly state that the party to which the compel order is directed must produce the requested documents, this is implied. Indeed, any other interpretation of a party's motion to compel or a trial court's order to compel document production would be unreasonable. And this is particularly true in this case. To accept SJL's argument, this court would have to conclude that the trial court's compel order merely required SJL to search but not produce the e-mails as requested by WaterOne. This is an absurd interpretation of the trial court's order. It would be unreasonable for any court to require the party at which the compel order is directed to waste its time and money searching for documents that had been requested by its opposing party without also requiring that party to produce all responsive documents discovered to its opposing party.

33

This is especially true in cases like this one where a party asserts that it will cost many thousands of dollars to complete the work. Of note, although SJL initially alleged that searching the e-mails under WaterOne's proposed e-mail search parameters would cost $34,570 to produce, in support of SJL's motion to reconsider, Timothy Davis—SJL's current Kansas counsel—estimated that it would cost $592,286 to complete the search, responsiveness review, privilege review, and production of the e-mails. It seems Davis' calculation is based off of the pricing set by his firm, Bryan Cave Leighton Paisner LLP, which was not the same outside vendor whose quote it initially provided to the trial court at the hearing on WaterOne's sanction motion. Neither below nor on appeal does SJL provide an explanation why there is a $557,716 discrepancy between the two estimates.

Also, although journal entries take precedence over a trial court's rulings from a bench in civil cases, it is still worth noting that at the hearing on WaterOne's motion to compel, the trial court and the parties had an in depth conversation about "producing" any missing responsive e-mails. See *Valdez v. Emmis Communications*, 290 Kan. 472, 482, 229 P.3d 389 (2010) (holding that in civil cases, a trial court's journal entry controls over oral rulings if there is a conflict between the two). Indeed, when discussing the e-mail discrepancies WaterOne discovered between the e-mails SJL produced on the pipeline project and the e-mails Black & Veatch had on the pipeline project, the trial judge made its expectations very clear:

> "We can look at a specific request and if an E-mail fits under that category, *then it needs to be produced. And to say that we produce things that are deemed responsive to the request, we should all be on the same page.* I think where we have a breakdown here is since *there have been many* E-Mails identified which, again, I can go back — but this is really not my job — *and see which of those E-mails correspond to a category that has been requested, then my assumption is going to be that those weren't produced because searches weren't made of those people's mailboxes. Because if they were, then we have got a bigger problem of how come in the sweep*[,] *those emails didn't get produced.*" (Emphases added.)

34

Moreover, almost right after the trial court made the preceding statement, Dibiasi told the trial court that it would "go back and *search again . . . so that we can move on*." (Emphasis added.) Given WaterOne's specific complaints about missing e-mails, SJL should have known that WaterOne was not going to "move on" until it was satisfied that it had received all responsive documents to its broadly worded e-mail production requests.

As a result, we decline to interpret WaterOne's motion to compel or the trial court's order to compel as simply requiring SJL to search for, but then not produce, any responsive e-mails. In turn, regardless of the specific directions included in the trial court's compel order, SJL's argument that the trial court lacked statutory authority to sanction it under K.S.A. 2020 Supp. 60-237(b)(2) because there was not an explicit order to produce the responsive e-mails is meritless because inherent in any party's motion to compel document production and in any trial court's order to compel document production is the request and order, respectively, that the party to which the compel order is directed produce the documents as requested and required under K.S.A. 2020 Supp. 60-234. Thus, when SJL failed to produce the e-mails as requested by WaterOne within 30 days as directed by the trial court's compel order, SJL violated the compel order, empowering the trial court with statutory authority under K.S.A. 2020 Supp. 60-237(b)(2) to sanction SJL.

*3) SJL violated the trial court's compel order in multiple ways.*

Yet, even if this court were to ignore SJL's preceding compel order violation, it is readily apparent that the trial court had the statutory authority to impose sanctions upon SJL under K.S.A. 2020 Supp. 60-237(b)(2) for other reasons too. Again, in its brief, WaterOne contends that notwithstanding SJL's violation of the trial court's order to produce all pipeline project e-mails responsive to its broad e-mail production requests,

35

the trial court could sanction SJL under K.S.A. 2020 Supp. 60-237(b)(2) because SJL violated the trial court's compel order by not performing the e-mail search after conferring with it to develop e-mail search parameters, by not providing verification of its efforts to locate its employees' pipeline project text messages, and by not producing its entire job file.

As for WaterOne's argument that SJL violated the trial court's order to compel by not conducting an e-mail search after conferring with it on the e-mail search parameters, in its reply brief, SJL contends that its failure to complete the search is irrelevant because the trial court did not rely on its failure to complete the search as a basis for its sanctions. In its reply brief, SJL further contends that it had no duty to perform this e-mail search under the parameters "unilaterally dictate[d]" by WaterOne.

But there are obvious problems with this argument. For starters, the trial court did rely upon SJL's failure to complete the e-mail search when sanctioning SJL. In its order imposing sanctions and denying SJL's protective order, the trial court explicitly stated that it did not find WaterOne's proposed e-mail search parameters unduly burdensome, noting: "If anything, [WaterOne's] requests following the Court's orders at the motion to compel hearing limited the scope of what otherwise would have covered all project-related E-mails of all individuals who worked on these projects." So despite SJL's argument to the contrary, one reason why the trial court sanctioned it under K.S.A. 2020 Supp. 60-237(b)(2) was its failure to even conduct the e-mail search as required by its compel order.

As for SJL's complaint that it had no duty to comply with the e-mail search parameters unilaterally dictated by WaterOne, SJL's argument ignores its own responses to WaterOne's broad e-mail production requests. Once again, WaterOne's e-mail requests effectively asked SJL to produce all pipeline project e-mails that could have any relevance to SJL's claims, SJL's defenses, or WaterOne's liquidated damages

36

counterclaim. As a result, WaterOne's first request for document production should have put SJL on notice that WaterOne's e-mail production requests were very broad and would likely take significant resources to comply with. By agreeing to produce all documents responsive to WaterOne's very broad e-mail production requests, however, SJL obligated itself under K.S.A. 2020 Supp. 60-234 to produce those e-mails as requested. Thus, WaterOne did not unilaterally dictate the parameters of the e-mail search because SJL's responses to WaterOne's very broad e-mail production requests also played a role in creating the e-mail search parameters WaterOne proposed. SJL's accommodating responses enabled WaterOne to request broad e-mail search parameters.

Additionally, SJL's argument that it had no duty to comply with the e-mail search under the parameters unilaterally dictated by WaterOne ignores its own representations to the trial court. During the discovery dispute, after telling WaterOne that it would provide all documents responsive to its e-mail production requests, SJL represented that it had complied with this request by giving WaterOne all of the pipeline project e-mails on three separate occasions—once in responding to WaterOne's golden rule letter and twice at the hearing on WaterOne's compel motion. Indeed, at the hearing on WaterOne's compel motion, the only caveat SJL made about its initial e-mail production was that it limited its production to all pipeline project e-mails found in the e-mail accounts of its employees who served in supervising roles on the pipeline project regardless of relevance.

Thus, during the hearing on WaterOne's motion to compel, SJL represented to the trial court that it had produced all e-mails within its pipeline project supervising employees' e-mail accounts regardless of relevance without difficulty. Thus, SJL implied to the trial court (1) that the scope of WaterOne's e-mail production request was not unduly burdensome and (2) that production of any inadvertently missing e-mails would not be unduly burdensome. Clearly, however, neither of SJL's representations were true because after making those representations, SJL conceded that its first e-mail search involved only a fraction of its pipeline project supervising employees' e-mail accounts for

37

just four pipeline project-related terms. What is more, it was only after SJL revealed that it had not produced all of its pipeline project supervising employees' e-mails on the pipeline project regardless of relevance that SJL moved for a protection order by alleging undue burden.

Simply put, because SJL represented on multiple occasions that it had no problems complying with WaterOne's broad e-mail production requests and, in fact, had already complied with WaterOne's broad e-mail production requests, SJL was bound by those representations. See *Arrowhead Const. Co. of Dodge City, Kansas v. Essex Corp.*, 233 Kan. 241, 247, 662 P.2d 1195 (1983), *disapproved of on other grounds by Wichita Sheet Metal Supply, Inc. v. Dahlstrom & Ferrell Const. Co., Inc.*, 246 Kan. 557, 792 P.2d 1043 (1990) (holding that "[a]s a general rule parties to an action are bound by their . . . judicial declarations and are estopped to deny or contradict them where the other parties to the action relied thereon and changed their position by reason thereof").

Turning to WaterOne's argument about SJL's text message production, we note that on appeal, SJL truly never disputes that it violated the trial court's compel order by not producing verification of its efforts to locate its employees' text messages on the pipeline project. Instead, in its reply brief, SJL asserts that the sanctions the trial court imposed on it for not verifying its efforts to produce the requested text messages were too severe. Thus, in other words, in its reply brief, SJL implicitly concedes that it did not comply with the trial court's compel order on its text message production; instead, it merely complains that the severity of the trial court's sanctions for this violation was unwarranted. By implicitly conceding that it did not comply with the trial court's compel order on its text message production, however, SJL has admitted that it violated the trial court's order to compel. As a result, regardless of SJL's compliance with the trial court's implicit compel order to produce the pipeline project e-mails as requested by WaterOne, the trial court had the statutory authority to sanction SJL under K.S.A. 2020 Supp. 60-

38

237(b)(2) based on SJL's violation of the trial court's compel order to verify its efforts to produce its employees' responsive pipeline project text messages.

Next, SJL's response to WaterOne's argument that it never produced the full job file as directed in the compel order is similarly unpersuasive. SJL contends that this court should not consider WaterOne's request for the full job file on the pipeline project as a request for it to produce all pipeline project e-mails. It asserts that WaterOne's argument that its document production request for the full job file required the production of SJL's supervising employees' e-mails on the pipeline project is inconsistent with its position that it should not have to pay the costs associated with any outside vendor because in the trial court's compel order, the trial court ordered WaterOne to pay the costs associated with copying the job file.

To be sure, WaterOne's position that the full job file required SJL to produce all e-mails is inconsistent with its position that it should not have to pay any outside vendor costs associated with completing the e-mail search under its proposed parameters. Even so, SJL's argument ignores that it created any confusion about whether WaterOne's request for the full job file included a request for all pipeline project e-mails. It was SJL, not WaterOne, that first alleged that WaterOne's request for the full job file included a request for production of pipeline project e-mails. In responding to WaterOne's compel motion, SJL explicitly alleged that "[t]he second part of WaterOne's 'incomplete job file' argument is that SJL has not produced all relevant email correspondence (and text messages) that are 'within its care, custody, and control.'"

It is a well-known rule that a party may not invite error and then complain about that error upon appeal. See *Water Dist. No. 1 of Johnson Co. v. Prairie Center Dev.*, 304 Kan. 603, 618, 375 P.3d 304 (2016). Here, because SJL told the trial court that WaterOne's request for the full job file included its requests for its employees' e-mails and text messages on the pipeline project, to the extent the trial court based its sanctions

39

order on SJL's failure to produce all e-mails as required by its request for the full pipeline project job file, SJL invited this error.

4) *SJL's representations about having produced all e-mails responsive to WaterOne's broad e-mail production requests were not inadvertent, nor was it the only basis for the trial court's imposition of sanctions.*

Once again, SJL asserts that the entire basis of the trial court's finding that it had agreed to produce all e-mails responsive to WaterOne's broad e-mail production requests was that it had "mistakenly indicated [that] it had produced 'all' project-related emails" while responding to WaterOne's golden rule letter. This assertion is wrong for multiple reasons.

First, the trial court's ruling found that SJL violated its discovery order in three ways: (1) by not complying with the explicit order to conduct a search of its employees' e-mail accounts for pipeline project e-mails after conferring with WaterOne about the scope of the e-mail search parameters; (2) by not complying with the trial court's implicit ruling to turn over all responsive e-mails found through the e-mail search; and (3) by not providing verification of its efforts to locate its employees' text messages on the pipeline project. Thus, it is readily apparent that SJL's failure to produce all e-mails responsive to WaterOne's broad e-mail production requests was not the only basis for the trial court's ruling.

More importantly, SJL continues to misrepresent the record by alleging it made only a single inadvertent comment about having "produced all the email files its employees [had] kept for [the pipeline] projects" while responding to WaterOne's golden rule letter. As just noted in the preceding subsection, SJL represented that it had complied with this request by giving WaterOne all responsive pipeline project e-mails three times.

40

*Conclusion*

Thus, to summarize, SJL argues that the trial court lacked statutory authority under K.S.A. 2020 Supp. 60-237(b)(2) to impose any sanction on it by not complying with WaterOne's e-mail production requests because WaterOne never requested and the trial court never ordered it to produce all pipeline project e-mails. Nevertheless, the record on appeal establishes the following: (1) that WaterOne effectively requested that SJL produce all pipeline project e-mails having any relevance to SJL's claims, SJL's defenses, or its liquidated damages counterclaim; (2) that SJL waived any objections to WaterOne's e-mail production requests under K.S.A. 2020 Supp. 60-234 by responding that it would produce all responsive documents as requested without objection; (3) that the trial court's order to compel implicitly required SJL to produce all pipeline project e-mails responsive to WaterOne's e-mail production requests; (4) that SJL violated this implicit compel order to produce all pipeline project e-mails responsive to WaterOne's e-mail production requests; (5) that SJL otherwise violated the trial court's explicit compel orders to conduct an e-mail search after conferring with WaterOne on search parameters and to verify its efforts to produce responsive text messages; and (6) that SJL's representations about having produced all responsive pipeline project e-mails were not inadvertent. As a result, SJL's argument that the trial court lacked the statutory authority under K.S.A. 2020 Supp. 60-237(b)(2) to impose any sanctions upon it is meritless.

*Did the Trial Court Err When It Imposed the Most Severe Sanctions Upon S.J. Louis for Violating Its Compel Order?*

In its second argument, SJL asserts that even if the trial court had the statutory authority to sanction it for violating its compel order under K.S.A. 2020 Supp. 60-237(b)(2), the trial court erred by dismissing its claims, striking its defenses, and entering default judgment in WaterOne's favor because those sanctions were too severe for its compel order violations. In making its argument, SJL emphasizes that Kansas caselaw

41

provides that dismissing a party's claims, striking a party's defenses, and entering default judgment in favor of its opponent should be sanctions of last resort. SJL then argues that the trial court erred by entering those sanctions because the sanctions were unwarranted under the *Canaan* factor test. According to SJL, a review of the facts of its case under the *Canaan* factor test establishes that none of the *Canaan* factors weighed in favor of the trial court's sanctions. Thus, SJL argues that we should vacate the trial court's imposition of sanctions and remand for further proceedings.

WaterOne counters that the trial court properly dismissed SJL's claims, struck SJL's defenses, and entered default judgment in its favor because the trial court's sanctions were "well-reasoned" and "sound" under the facts of this case. WaterOne highlights the trial court's finding that SJL deliberately misrepresented its compliance with the disputed discovery requests and the compel order. WaterOne asserts that because SJL misrepresented its compliance with its e-mail production requests and the trial court's compel order, the trial court reasonably determined that lesser alternative sanctions would not have protected it from future discovery abuses.

At this juncture, it is important to note that SJL's arguments are limited to the trial court's sanctions of dismissing its claims, striking its defenses, and entering default judgment in WaterOne's favor. That is, on appeal, SJL never challenges the trial court's sanction requiring it to pay WaterOne's attorney fees associated with preparing and filing its motions to compel and for sanctions. Indeed, neither SJL's appellant brief nor SJL's reply brief even reference the trial court's sanction requiring it to pay WaterOne's attorney fees associated with preparing and filing its motions to compel and for sanctions. So SJL has abandoned its ability to challenge its attorney fees sanctions by not raising this argument on appeal. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (holding that an issue not briefed by an appellant is deemed waived and abandoned). As a result, even if SJL successfully establishes that the trial court erred by dismissing its

42

claims, striking its defenses, and by entering default judgment in WaterOne's favor, SJL must pay WaterOne's attorney fees as ordered by the trial court.

*Applicable Law*

As previously noted, this court reviews whether the trial court erred by sanctioning a party for violating its discovery orders for an abuse of discretion. *Schoenholz*, 295 Kan. at 798.

In *Canaan*, our Supreme Court declared that before a trial court orders default judgment as a discovery sanction, the court must consider the following questions: (1) Does the discoverable material go to a dispositive issue in the case? (2) Are alternative sanctions sufficient to protect the party seeking discovery available? and (3) Is the requested information merely cumulative or corroborative? 272 Kan. at 727-28 (citing *Hawkins v. Dennis*, 258 Kan. 329, 341, 905 P.2d 678 [1995]); see *Vickers v. Kansas City*, 216 Kan. 84, Syl. ¶ 7, 531 P.2d 113 (1975) (listing an earlier version of the same test); see also *Lara v. Vasquez*, 33 Kan. App. 2d 128, 131-32, 98 P.3d 660 (2004) (Failure of the trial court to consider these questions before ordering default judgment constituted an abuse of the court's authority to sanction discovery faults.); *Nemesis Partners, Inc. v. Martin*, No. 115,891, 2017 WL 658266, at *5-6 (Kan. App. 2017) (unpublished opinion) (vacating the trial court's imposition of discovery sanctions for failing to consider the *Canaan* factor test and remanding for consideration of the factor test).

Also, in *Canaan*, our Supreme Court held: "Where the evidence shows that a party has acted in deliberate disregard of reasonable and necessary court orders and the party is afforded a hearing and an opportunity to offer evidence of excusable neglect, the imposition of a stringent sanction will not be disturbed." 272 Kan. at 726-27.

*Ultimate Sanctions Wrongly Imposed*

Having addressed the applicable law, we now consider SJL's argument that the trial court wrongly found that the *Canaan* factor test supported dismissing its claims, striking its defenses, and entering default judgment in WaterOne's favor.

*1)* Canaan *Factor One: The disputed discovery was dispositive.*

On the first *Canaan* factor, SJL argues that the disputed discovery did not involve a dispositive issue in its case. SJL notes that when the trial court ruled against it on this factor, it did so because it determined that WaterOne's document production requests sought documents that were "relevant to [its] counterclaims, which [sought] liquidated damages for delays." SJL, however, complains that the trial court wrongly confused the concepts of "relevant discovery" with "dispositive discovery." According to SJL, the first *Canaan* factor prohibits trial courts from imposing the severest sanctions on a party unless that party was refusing to provide discovery that would "dispose of" the case.

Nevertheless, the first obvious problem with SJL's argument is that the word "dispositive" has multiple meanings. According to Black's Law Dictionary, the word "dispositive" means "[b]eing a deciding factor" or "bringing about a final determination." Black's Law Dictionary 593 (11th ed. 2019). Thus, discovery that is dispositive might not entirely dispose of a case. Instead, discovery may be dispositive if it involves a deciding issue in the case.

As WaterOne pointed out in its brief, it was seeking SJL's project file to determine if the project file would help prove its liquidated damage counterclaim against SJL. For example, WaterOne notes that if the project file showed that SJL's delay in completing the pipeline project was caused by SJL's negligence in timely scheduling a contractor to perform under the pipeline contract, this would be dispositive on an issue in this case,

44

that is, SJL's unjustified delay in completing the pipeline contract, entitling WaterOne to liquidated damages.

WaterOne here effectively requested that SJL produce all pipeline project e-mails having any relevance to SJL's claims, SJL's defenses, and its own liquidated damages counterclaim. Accordingly, SJL's argument that the disputed discovery was not "dispositive discovery" rings hollow.

> 2) Canaan *Factor Three: The disputed discovery was not cumulative or corroborative.*

Skipping over the second *Canaan* factor temporarily, it is readily apparent that the trial court properly found that WaterOne's e-mail and text message production requests were not cumulative or corroborative of other evidence. In a nutshell, SJL contends that the trial court abused its discretion by finding that WaterOne's e-mail and text message production requests were not cumulative or corroborative for the following reasons: (1) because WaterOne wanted the discovery to establish that SJL caused the pipeline project construction delays; (2) because WaterOne likely already had access to many of the e-mails requested; and (3) because it did ultimately verify its efforts to produce its employees' pipeline project text messages. Yet, as with its arguments concerning the first *Canaan* factor, there are several problems with SJL's argument about the third *Canaan* factor.

First, SJL's argument about WaterOne just wanting the disputed discovery to establish that SJL caused the pipeline project construction delays is confusing. According to SJL, "[w]hat WaterOne seeks in its quest for more emails is to load an additional arrow into its quiver—it wants to be able to argue, 'not only did [it] not do anything wrong, in fact, it was S.J. Louis [that] caused the delays itself.'" Nevertheless, K.S.A. 2020 Supp. 60-226(b) provides that "[p]arties may obtain discovery regarding any nonprivileged

45

matter that is relevant to any party's claim or defense." Because WaterOne properly filed its liquidated damages counterclaim against SJL, upon SJL's response that it would produce "[a]ll documents responsive to" WaterOne's broad e-mail and text messages production requests without objection, WaterOne had the right to access those requested documents.

Indeed, WaterOne noted in its brief that its e-mail request was not duplicative or cumulative. WaterOne stated that the e-mails were relevant to the dispositive question and posed the following question: "[W]hy wasn't the project finished as scheduled?"

Also, the record supports that the parameters of SJL's initial e-mail search would not have uncovered many e-mails responsive to WaterOne's broad e-mail production requests. Although SJL emphasizes that it gave 3,000 e-mails to WaterOne following its search of the 6 supervising employees' e-mail accounts for the 4 search terms, in a declaration attached to its motion to reconsider, SJL's current Kansas counsel—Timothy Davis—explained that there were 434,007 e-mails and 445,951 attachments within the 39 SJL employee e-mail accounts WaterOne wanted searched. While most of those e-mails and attachments likely had nothing to do with the pipeline project, according to SJL's own numbers, SJL produced just .69 percent of the total e-mails on its server. [3,000 ÷ 434,007 = .00691.]

And as demonstrated by this lawsuit, the construction of the pipeline project did not go as planned. Given the preceding facts, substantial competent evidence supported the trial court's finding that SJL had not turned over requested and discoverable e-mails that involved a dispositive issue in the parties' lawsuit.

As for SJL's remaining argument why WaterOne's discovery production requests were cumulative or corroborative, SJL challenges the following finding by the trial court:

46

"Additionally, it does not appear that plaintiff made any attempt to search for and gather text messages of its employees who worked on the projects, and if plaintiff made this attempt, it certainly did not verify it as required by the journal entry on the motion to compel. Without turning over any text messages, it cannot be assumed that all information that could have been gathered therefrom would be cumulative."

SJL contends that this finding was not supported by the evidence for two reasons: (1) because at the hearing on WaterOne's motion to compel, Vallakalil verbally told the trial court that SJL had tried but failed to find any of its employees' pipeline project text messages, citing to a change in cell phone service providers; and (2) because in its motion to reconsider, DiBiasi attached a sworn declaration stating that he verbally notified WaterOne of this fact sometime in late November 2017.

Although Vallakalil told the trial court that SJL had tried but failed to find any of its employees' pipeline project text messages because SJL had switched cell phone service providers, the trial court clearly did not accept Vallakalil's oral submission. It is readily apparent that the trial court wanted documentation that SJL had actually done what it said it had done to locate its employees' pipeline project text messages. Otherwise, at the hearing on WaterOne's compel motion, the trial court would have simply accepted Vallakalil's oral submission instead of ordering SJL to "provide . . . verification [of] its efforts to search for and gather text messages of its employees who worked on the projects."

Thus, none of SJL's arguments about the requested discovery being cumulative or corroborative are persuasive. Under the facts of this case, the trial court properly refused to assume that all information within SJL's employees' e-mails and text messages on the pipeline project would have been cumulative or corroborative.

*3) Canaan Factor Two:  Lesser alternative sanctions would have protected WaterOne from SJL's future discovery abuses.*

In considering the third *Canaan* factor, SJL argues that the trial court could have imposed lesser alternative sanctions upon it for violating the compel order because it made a good-faith effort to comply with the compel order. SJL contends that lesser alternative sanctions were available because the trial court could have (1) imposed monetary penalties upon it until it complied with the compel order or (2) order that an adverse inference instruction be given to the jury if SJL failed to turn over the disputed discovery by a certain date. SJL then asserts that it acted in good-faith compliance with the trial court's compel order because it complied with five out of the six trial court's compel orders. It further asserts that it moved for a protective order as soon as it possibly could have. And as previously indicated, throughout its brief, SJL alleges that the trial court erred by dismissing its claims, striking its defenses, and entering default judgment in WaterOne's favor because it had "inadvertently" and "mistakenly indicated [that] it had produced 'all' project-related emails" while responding to WaterOne's golden rule letter. Once again, there are problems with SJL's argument.

First, although SJL undoubtedly turned over some discovery to WaterOne, it certainly did not comply with five out of the six compel orders. As addressed at length, SJL violated the trial court's compel orders to produce any responsive pipeline project e-mails after conducting the e-mail search under agreed-upon parameters and to verify its efforts to locate its employees' pipeline project text messages. About WaterOne's request for the full job file, even under the assumption that WaterOne's request for the full job file did not require SJL to turn over all pipeline project e-mails, it seems SJL did not give WaterOne access to its job files until November 30, 2017, three days after the trial court's November 27, 2017 compel order deadline. Thus, at best, SJL fully complied with a single compel order—the trial court's compel order to reveal how it determined what e-

48

mails were responsive to WaterOne's e-mail production request when making its initial e-mail production.

Second, some of the things SJL points to as evidence of its good-faith attempt to comply with the trial court's compel order undermines its argument. For instance, SJL notes that two weeks after the trial court made its oral rulings from the bench and eight days after the trial court filed its compel order, SJL complied with the trial court's order to explain the scope of its initial e-mail production. SJL stresses that it told WaterOne that it believed its proposed e-mail search parameters were unduly burdensome on November 30, 2017. Also, it cites to DiBiasi's sworn declaration, stating (1) that he verbally notified WaterOne that SJL did not have access to its employees' past text messages in late November 2017 and (2) that afterwards, it made "its best efforts" to complete the e-mail search before "it quickly became clear that [it] simply did not have the in-house IT manpower to get the job done within any reasonable timeframe." Put simply, under the facts of this case, we do not believe that the preceding conduct establishes that SJL acted in good faith.

In any event, we note that K.S.A. 2020 Supp. 60-237(b)(2) sets out the sanctions which may be imposed for failure to allow discovery or failure to obey a trial court's discovery order. The trial court here concluded, under its Order Denying Plaintiff's Motion for Relief from Judgment, that default judgment was the appropriate sanction. In considering why lesser sanctions would be inappropriate, the trial court stated the following: "Other sanctions were insufficient to protect defendant from further discovery abuses. Plaintiff exhibited a pattern of discovery-related misconduct that would not have been remedied by a lesser sanction."

The trial court here was understandably frustrated and upset with SJL's actions (or inactions) and excuses in failing to comply with the trial court's order compelling discovery. Still, we note that the trial court's compel order here did not warn SJL that

49

drastic sanctions such as dismissal and default judgment would be imposed if SJL failed to comply with discovery. Moreover, we note the trial court did not impose any lesser sanctions on SJL in an attempt to deter it from continuing to disobey the trial court's compel order before imposing the ultimate sanctions of the following: (1) dismissing SJL's claims against WaterOne, (2) striking SJL's defenses to WaterOne's claim for liquidated damages, and (3) entering default judgment against SJL on WaterOne's claims for liquidated damages.

In *Canaan*, our Supreme Court emphasized that a "sanction should be designed to accomplish the objects of discovery rather than for the purpose of punishment." 272 Kan. at 728. Indeed, in *Canaan*, our Supreme Court reaffirmed its "well-established rule that . . . 'the dismissal of a cause of action is a drastic remedy to impose as a discovery sanction and should be used only in extreme circumstances.'" 272 Kan. at 736. Based on this precedent, as well as the district court's failure to impose lesser sanctions or warn SJL that it may impose the ultimate sanctions for violating its compel order, we conclude that the impositions of those ultimate sanctions were unwarranted. And we further conclude that constituted an abuse of discretion.

*Conclusion*

Thus, to summarize, in *Canaan*, our Supreme Court held that whether a trial court abuses its discretion when entering default judgment against a party for a discovery order violation, appellate courts must consider (1) whether the disputed discovery involved a dispositive issue in the case, (2) whether the disputed discovery can be obtained through lesser alternative sanctions, and (3) whether the disputed discovery was merely cumulative or corroborative. Here, although the disputed discovery involved a dispositive issue that was neither cumulative nor corroborative, because the trial court never sanctioned SJL before dismissing its case, striking its defenses, and entering default judgment in favor of WaterOne, the record on appeal does not support the trial court's

finding that no lesser alternative sanctions would have ensured SJL's compliance with its discovery order. We therefore reverse the imposition of those ultimate sanctions and remand for further proceedings. But we otherwise affirm the trial court's order requiring SJL to pay attorney fees in the amount of $4,557 for the cost of preparing the initial motion to compel and for the filing and preparation of the motion for sanctions set out in the trial court's journal entry of judgment dated February 16, 2018.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

* * *

ATCHESON, J., concurring:  A bedrock principle of the civil justice process calls on courts at every level and in every jurisdiction to strive whenever possible to decide cases on their merits. See *Fisher v. DeCarvalho*, 298 Kan. 482, 500, 314 P.3d 214 (2013); *Cohen v. Board of Trustees of the University of the Dist. of Columbia*, 819 F.3d 476, 482-83 (D.C. Cir. 2016); *Franklin Collection Service, Inc. v. BancorpSouth Bank*, 275 So. 3d 1048, 1060 (Miss. 2019); *Sellers v. Longview Orthopedic Associates*, 11 Wash. App. 2d 515, 520, 455 P.3d 166 (2019); 46 Am. Jur. 2d Judgments § 225; 49 C.J.S. Judgments § 255. Defendants defaulting at the outset through their own slothfulness typically will be afforded a measured chance at redemption. See *Jenkins v. Arnold*, 223 Kan. 298, 299-300, 573 P.2d 1013 (1978); 49 C.J.S. Judgments § 548. Similarly, parties should face default as a sanction for their lawyers' discovery abuses only as a last resort. *Canaan v. Bartee*, 272 Kan. 720, 727, 35 P.3d 841 (2001); *City of Neodesha v. BP Corporation*, 50 Kan. App. 2d 731, Syl. ¶ 15, 334 P.3d 830 (2014); *Ridgaway v. Mount Vernon Fire Insurance Company*, 328 Conn. 60, 71-72, 176 A.3d 1167 (2018); *MDB Trucking, LLC v. Versa Products Company, Inc.*, 475 P.3d 397, 404 (Nev. 2020); 23 Am. Jur. 2d Depositions and Discovery § 231. Here, however, the Johnson County District Court turned too hastily to default when its initial and inexact order to compel discovery didn't

51

put an end to the lawyers' wrangling over the production of electronically stored information. We, therefore, appropriately reverse the sanctions the district court imposed on Plaintiff S.J. Louis Construction, Inc. dismissing its breach of contract claim for nearly $700,000 and entering judgment for Water District No. 1 of Johnson County on its $612,000 counterclaim for liquidated damages under the contract.

The sanctions have nothing to do with underlying merits of the competing legal claims between S.J. Louis and Water District No. 1. Rather, they represent the ultimate punishment a district court can inflict on a civil litigant for abusing the discovery process and, as such, should be reserved for exceptional misconduct typically displaying flagrant and repetitive disregard of the governing rules and corrective judicial orders. For its length and detail, the majority opinion gives short shrift to those foundational principles in explaining our decision.

To be sure, the lawyers for S.J. Louis were, at best, something less than forthcoming in responding to written discovery from Water District No. 1 and appear to have dissembled to both their counterparts and the district court in explaining their responses leading up to the order to compel. The record certainly suggests the lawyers for S.J. Louis acted with neither respectable candor nor dutiful alacrity once their client faced a counterclaim rivaling its claimed damages. The district court could have imposed measured sanctions on the lawyers or S.J. Louis when it entered the order to compel. But the district court did not.

The district court's order to compel directed S.J. Louis to produce additional documents, to substantiate its claim that text messages could not be retrieved from a former service provider, and to make an expanded review of staff e-mail files after the lawyers "confer[ed] and develop[ed] the scope of the search." The expanded discovery was to be completed within 30 days. In what by hindsight reckoning seems entirely predictable, the lawyers could not work out a plan for the e-mail search. Water District

No. 1 insisted on a broad scope for the search. Given the tight deadline, S.J. Louis wanted to outsource the search at a cost it represented to be almost $35,000 and insisted Water District No. 1 bear the expense. Rather than promptly seeking a conference with the district court for guidance or modification of the order, the lawyers staged another pitched discovery battle with Water District No. 1 filing a motion for sanctions and S.J. Louis responding and seeking a protective order. The flurry of filings apparently stalled discovery and further delayed the case. None of that is good.

But the question remains whether the circumstances warranted the exceptionally harsh sanctions the district court then imposed directly on S.J. Louis in granting Water District No. 1's motion. The district court deprived S.J. Louis of the opportunity to prove its claim for almost $700,000 in contract damages and socked the company with what amounted to a $600,000 civil penalty—the amount of Water District No. 1's similarly unproved counterclaim—all for discovery abuses that had impeded the progress of the case. But those abuses had not precluded a fair adjudication of the underlying dispute through a judgment on the merits of the competing claims for breach of contract. The bad discovery behavior could have been remedied without terminating the litigation.

On appeal, with a new set of lawyers, S.J. Louis has offered a series of specious arguments that there were no misrepresentations, undue delays, or other discovery abuses in the district court. In the ballpark of minimally acceptable appellate advocacy, those arguments sit somewhere in the last rows of the upper deck far removed from the playing field of the persuasive. But the lawyers have also suggested the district court's sanctions were unduly punitive under the circumstances. Here, those suggestions play a lot more like Tinker to Evers to Chance.

The district court relied on K.S.A. 2020 Supp. 60-237(b)(2) to sanction S.J. Louis. Under that statute, district courts may choose among an array of sanctions to remedy the violation of a discovery order, including striking the miscreant party's pleadings or

rendering a default judgment against that party. Those remedies redress a party's failure to comply with an order after it has been entered rather than the party's dilatory or improper responses to discovery propounded by another party. Those sorts of responses warrant a district court order compelling discovery and an award of attorney fees as a sanction against the derelict party, its lawyers, or both. K.S.A. 2020 Supp. 60-237(a)(5). The order to compel may also allocate some or all of the expenses associated with the discovery of electronically stored information to that party. See K.S.A. 2020 Supp. 60-226(b)(2)(B) (district court may specify conditions of discovery of electronically stored information taking into account the burdens and costs of production); K.S.A. 2020 Supp. 60-226(c)(1)(B) (district court may enter protective order allocating expenses for discovery).

In *Canaan*, the court identified three factors to be considered in sanctioning a litigant for violating a discovery order: (1) whether the material or information sought bears on a dispositive issue; (2) whether less drastic sanctions would promote proper discovery; and (3) whether the discovery would be cumulative or corroborative of information already available. 272 Kan. 720, Syl. ¶ 6. The sanctions should be designed to secure otherwise discoverable documents or testimony rather than being purely punitive. In turn, default must be considered a remedy of last resort as a discovery sanction. 272 Kan. at 727-28. Although a district court's decision to sanction a party largely rests within the realm of judicial discretion, the specific sanctions—particularly those that deprive a litigant of an adjudicatory forum—must be drawn with care and circumspection. 272 Kan. at 727.

Here, the district court did not carefully apply that legal framework. See *Venters v. Sellers*, 293 Kan. 87, 97, 261 P.3d 538 (2011) ("failure to abide by legal framework constitutes abuse of discretion") (citing *State v. Gonzalez*, 290 Kan. 747, 756, 234 P.3d 1 [2010]); see also *Canaan*, 272 Kan. at 731 (under circumstances, failure to first impose lesser sanction than default for violation of discovery orders amounted to abuse of

54

discretion). Some of the S.J. Louis e-mails likely bore on dispositive issues in this litigation, including responsibility for production delays, and did not appear to be redundant of already available evidence. But the district court had less drastic options at its disposal to enforce its discovery order. The parties or more precisely their lawyers were at loggerheads over carrying out the order to compel discovery of S.J. Louis' e-mails and the relative difficulty in identifying and reviewing discoverable messages among the welter of e-mail communications. The order itself provided no guidance on implementation and simply stated the discovery objectives and a quick deadline for compliance.

Had the lawyers flagged their disagreements when they arose, the district court obviously could have considered the conflicting arguments on the scope of the search parameters, the cost of having a third-party provider conduct the search, and other matters bearing on the discovery itself. The district court then would have been in a position to promptly modify its order to compel or to enter a second order outlining how the discovery was to be accomplished. Water District No. 1 didn't do so and allowed the problem to fester. In anticipation of ongoing difficulties, the district court could have appointed a lawyer or retired judge with expertise in electronically stored information as a special master to oversee the discovery and allocated his or her fees equitably. See K.S.A. 2020 Supp. 60-253(c) (court appointed master "may require the production of evidence on all matters embraced in the reference"). Those are merely suggestions among myriad alternatives the district court might have effectively deployed rather than defaulting S.J. Louis.

Confronted with Water District No. 1's motion for sanctions, the district court also stepped outside the governing legal framework in that it appeared to punish S.J. Louis at least in part for the conduct of its lawyers *before* the order to compel was entered. As I have said, the lawyers' conduct was improper. Those improprieties entail background to the order to compel and inform the grounds for the order. But they could not be directly

55

considered in fashioning a sanction for violating an order that didn't exist at the time. Conversely, serial violations of discovery orders can and should be weighed in assessing escalating sanctions up to and including default. Here, however, neither S.J. Louis nor its lawyers engaged in a pattern of violating discovery orders.

Even with repeated violations, more tailored sanctions than default may be appropriate in a given case. Lawyers may be held in contempt for violating discovery orders. See K.S.A. 2020 Supp. 60-237(b)(2)(vii); *State v. Davis*, 266 Kan. 638, 646-47, 972 P.2d 1099 (1999). Monetary sanctions may be imposed on lawyers, the litigants, or both. The district court may draw adverse inferences about the underlying facts, curtail the admission of evidence at trial, or bar particular claims or defenses to remedy violations of discovery orders. Although those sanctions move toward default, they stop short of entering an adverse final judgment.[*]

[*]Lawyers also have independent ethical duties of candor to the courts and to "expedite litigation." See KRPC 3.2 (2021 Kan. S. Ct. R. 384); KRPC 3.3 (2021 Kan. S. Ct. R. 385). And they may be subject to disciplinary proceedings for violating those duties. I intend no comment on possible ethical lapses lurking in this case and simply point out another remedial device for lawyer misconduct apart from defaulting a client.

The district court also relied on the lengthy delay in discovery that it attributed primarily to S.J. Louis and its lawyers. The pace of discovery lagged in this case. And the record does suggest the lawyers for S.J. Louis sought to slow down the process—a deliberate tactic in some cases intended to make settlement seem like a more attractive option than litigation by attrition. But most of the delay occurred before the district court entered its order to compel. Whatever the reasons for or motives behind the snail-like pace of discovery until then, that dilatoriness can neither be ascribed to S.J. Louis as a failure to comply with the order to compel nor as a ground to sanction S.J. Louis under K.S.A. 2020 Supp. 60-237(b) for violating the order. S.J. Louis' conduct after the district court entered the order to compel did not occasion a delay warranting default as a sanction. As I have indicated, neither side promptly sought the district court's

56

intervention when they could not agree on discovery protocols for the e-mail communication.

Moreover, Water District No. 1 has not demonstrated actual prejudice resulting from the rather fallow discovery preceding or following the order to compel. If discovery abuses by one party have compromised an opposing party's ability to materially support the substance of its claims or defenses, the district court should calibrate any sanctions accordingly. *Scampone v. Grane Healthcare Company*, 169 A.3d 600, 628 (Pa. Super. 2017); *Cattrell Companies, Inc. v. Carlton, Inc.*, 217 W. Va. 1, 14, 614 S.E.2d 1 (2005); 23 Am. Jur. 2d Depositions and Discovery § 231 (default typically should not be ordered as a discovery sanction absent "severe prejudice to the adverse party"). The parties here are corporate entities—one governmental and one private—fighting over damages arising from a contract performed less than optimally. The continuing existence of neither will rise or fall on this case, so time is not so imperative as to force an artificial resolution based on discovery delays rather than on an adjudication of the merits. The amount of money involved, however, can be fairly characterized as substantial, another factor favoring a merits resolution. See *Ameristar Casino East Chicago, LLC v. Ferrantelli*, 120 N.E.3d 1021, 1027 (Ind. App. 2019); 49 C.J.S. Judgments § 288. Those considerations further illustrate how the default sanction here fails to conform to the legal framework.

In entering the sanctions, the district court also mentioned S.J. Louis' failure to document the unavailability of employee text messages from the relevant period as required by the order to compel. The company did not, although that omission presumably could have been rather quickly rectified and alone would not justify exceptional sanctions.

Discovery disputes and resulting sanctions orders come in almost every permutation. Appellate decisions across cases and courts can be found to support almost any result from mild sanctions to dismissal for an almost endless array of disreputable

57

discovery practices. Ultimately, each case rises or falls on its own circumstances guided by the fundamental principles I have outlined. Assessed in that context, the district court defaulted S.J. Louis—an ultimate sanction that undermines the core objective of the civil justice process. The harm remedied should be commensurately destructive of the process, and here it was not.

Apart from affording the party facing discovery sanctions adequate notice and a fair opportunity to be heard, there are (to be sure) few absolutes. A single act may be sufficiently egregious to warrant severe and even ultimate sanctions. A party's willful destruction of compelling adverse evidence or the fabrication of phony favorable evidence would, in the abstract, be good examples. Likewise, a pattern of dilatory or contumacious responses to court orders compelling discovery would warrant severe sanctions.

In assessing the propriety of particularly harsh sanctions, such as default, appellate courts often consider whether the contumacious party had been warned that continued flouting of discovery orders could result in dismissal or similar penalties. See *Hawkins v. Dennis*, 258 Kan. 329, 342-43, 905 P.2d 678 (1995); *Locasto v. City of Chicago*, 379 Ill. Dec. 358, 365, 6 N.E.3d 435 (2014); *Mohns, Inc. v. BMO Harris Bank National Association*, 395 Wis. 2d 421, 448-49, 954 N.W.2d 339 (2021). Here, the district court included no warning in its order to compel. Although the omission arguably weighs against default as a sanction, I do not consider such an advance warning to be a necessary condition or even an especially significant factor in imposing discovery sanctions. Lawyers even minimally versed in civil procedure should understand they or their clients can be sanctioned for violating any court order, including discovery orders in particular, and the sanctions may be severe. That said, such a warning both signals a district court's intent to scrupulously hold the litigants and their lawyers to discovery orders that have been entered and averts any later plea for mitigation based on lack of notice or general ignorance.

The circumstances here demonstrate the sort of misapplication of the governing legal framework indicative of an abuse of discretion. The district court failed to carefully distinguish between discovery abuses by S.J. Louis' lawyers before it entered the order to compel and the comparatively limited delays and other difficulties they occasioned afterward. Some of the problems implementing the order stemmed from the district court's decision delegating the formulation of search protocols to the lawyers—an invitation to continued bickering—coupled with the failure of either side to seek judicial intervention before resorting to another briefing battle with competing demands for a sanctions order and a protective order. The district court had lesser sanctions than default at its disposal that would have allowed the case to go forward. Default imposed an especially harsh penalty on S.J. Louis for the improper conduct of its legal team. Those improprieties, though quite serious, did not entail repeated and flagrant disregard of discovery orders, as contemplated for ultimate sanctions, such as default. We, therefore, correctly reverse and remand with directions to reinstate the litigation.

On remand, the district court should take steps to address the protocols for the e-mail discovery, including the allocation of costs associated with it; set a firm deadline for S.J. Louis to establish its inability to provide text messages; and deal with any other unresolved discovery issues. The district court may, of course, consider alternative sanctions consistent with our review and remand.

Our decision today, however, should not deter or dissuade district courts from actively managing discovery and vigilantly sanctioning discovery abuses. Diligent judicial intervention not only promotes the fair and expeditious resolution of the case at hand but sends a signal to future litigants to hew to the rules. At the same time, however, district courts must act with discernment to impose appropriately calibrated sanctions. Those tasks are essential for the fair adjudication of civil actions. The district court's

instincts here were laudable. But the fit between the need for vigilance and the overarching purpose of fair adjudication missed the mark.